In re GILFILLAN.

(Supreme Court, Appellate Division, Fourth Department. July 7, 1908.)

OFFICERS—SOLDIERS' PREFERENCE LAW—MORTGAGE TAX DEPUTY—RIGHT TO
   CONTINUE IN SIMILAR POSITION.

   Civil Service Law, § 21, as amended by Laws 1904, c. 698, forbids the
removal from a position in the public service in the county, etc., of an
honorably discharged soldier in the Spanish War, except for incompetency
or misconduct, and provides that, if his position becomes unnecessary or
is abolished, he shall not be discharged, but shall be transferred to some
other position for which he may be fitted at the same compensation.
The section was made not applicable to the position of private secretary,
cashier, or deputy of any official or department. By Mortgage Tax Law,
Laws 1905, c. 729, the county clerk was to receive necessary expenses,
including "hire of clerks and assistants, being first approved and allowed
by the state board of tax commissioners." The state board of tax com-
missioners was given supervisory powers over recording officers and
authorized to make rules respecting their duties. Before the act be-

came effective the state board of tax commissioners allowed the county clerk a mortgage tax deputy at a salary of $1,800 per year and a cashier and a bookkeeper at less salaries, respectively, and reported the same to the civil service commission, with their approval, and the civil service commission adopted a resolution classifying the positions of mortgage tax deputy and cashier, and adding them to the exempt class. Relator, a Spanish War veteran, was appointed mortgage tax deputy by the county clerk, was designated and classified as such in the mortgage tax department, performed the duties assigned to that department of the county clerk, and received the salary therefor; but relator contended that he was a clerk and assistant. The law was subsequently amended, the work simplified, and the allowance for clerks and assistants reduced. The position of mortgage tax deputy was then abolished by the county clerk, and the relator discharged. *Held*, that after the change in the mortgage tax system, and the reduction in the allowance for assistants, the clerk had a right to reorganize the department, without keeping relator's position for him, or making a new place for him, and was not required to remove the cashier and appoint relator to the position in charge of the funds, even if relator was not a deputy or within the exception to the veterans' preference law.

Appeal from Special Term, Erie County.

Application by Andrew B. Gilfillan for a writ of mandamus to John H. Price, as county clerk of Erie county, to require applicant's reinstatement in a certain position, or appointment to a similar position. From an order denying the application (58 Misc. Rep. 273, 109 N. Y. Supp. 376), applicant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Hamilton Ward, for appellant.
Simon Fleischmann, for respondent.

KRUSE, J. The relator applied at Special Term for a peremptory or alternative writ of mandamus requiring the county clerk of Erie county to reinstate him in the position formerly occupied by him in connection with the collection of mortgage taxes, as provided by chapter 729, p. 2059, of the Laws of 1905, or appoint him to a similar position. The application was denied, and the relator appeals.

The relator is a Spanish War veteran. He claims that he is entitled to preference under the civil service law, and should have been retained in service, even if it was necessary to discharge some one in the department where he was employed. The relator was appointed under the provisions of the mortgage tax law of 1905 (chapter 729, p. 2059, of the Laws of 1905). Under the provisions of that act the county clerk received his necessary expenses, among others, "hire of clerks and assistants, being first approved and allowed by the state board of tax commissioners," which he was permitted to retain out of moneys coming into his hands (section 311). The state board of tax commissioners was vested with general supervisory powers over the recording officers, and authorized to make rules and regulations respecting their duties. The recording officer, as well as the treasurer, who ultimately received the taxes, was required to give a bond for the faithful discharge of his duties (section 312). The mortgage tax was made payable to the proper officer at the recording office, and the recording officer was required to give a receipt therefor (section 296), and at stat-

ed periods was required to pay the same over to the treasurer (section 307).

Just before July, 1905, when the act became effective, the state board of tax commissioners approved and allowed the county clerk the sum of $4,400 for salaries for clerks and assistants, namely, one mortgage tax deputy at a salary of $1,800 per year, one cashier at a salary of $1,400 per year, and one bookkeeper at a salary of $1,200 per year, and reported the same to the state civil service commission, with their approval thereof, and thereupon the state civil service commission adopted a resolution, which was approved by the Governor, classifying the positions of mortgage tax deputy and cashier and adding them to the exempt class. Thereupon, and on or about July 1, 1905, the county clerk appointed the relator, Andrew B. Gilfillan, mortgage tax deputy, Lambert Deakers cashier, and Andrew Kurtz bookkeeper. The relator denied that he was appointed mortgage tax deputy, contending that he was appointed clerk and assistant; but, no matter what name the relator's place was given, he was appointed to the place which was designated and classified as "mortgage tax deputy" in the mortgage tax department, which was made necessary and constituted under the provisions of the mortgage tax law. Moreover, he performed the duties which had been assigned in that department by the county clerk for the mortgage tax deputy to do, receiving the salary of $1,800 therefor, until the position was abolished.

The mortgage tax law of 1905 was substantially amended in 1906. Laws 1906, p. 1447, c. 532. A single recording tax, instead of an annual one, was provided for. The system was simplified, and the work materially lessened, and thereafter the tax commissioners reduced the annual allowance to the county clerk for clerks and assistants to the sum of $3,500, commencing with the 1st of October, 1907. On November 12, 1907, the relator was notified by the county clerk that he had decided to abolish the position of mortgage tax deputy, to take effect on November 15, 1907, and thereupon the place or position was abolished, and the relator discharged.

The relator claims the right to be retained in the service of the county clerk under the provisions of the civil service law. Section 21 of that act (Laws 1899. p. 809, c. 370), as amended by chapter 697, p. 1694, of the Laws of 1904, forbids the removal from a position in the public service, in the state or its several cities, counties, towns, or villages, of an honorably discharged soldier, sailor, or marine, who served in the Union army or navy during the War of the Rebellion, or that of the volunteer army or navy of the United States during the Spanish War, or a person who has served as a volunteer fireman, as therein provided, except for incompetency or misconduct, shown after a hearing upon due notice and upon stated charges. It also provides that, if the position so held by such a person shall become unnecessary or be abolished for reasons of economy or otherwise, he shall not be discharged from the public service, but shall be transferred to any branch of said service, for duty in such position as he may be fitted to fill, receiving the same compensation therefor; and it makes it a duty of all persons having power of appointment to make such transfer effective. It is also made the duty of the head of the department or

office in which such person had been employed to furnish his name to the state civil service commission, with the statement of the date of his original appointment in the service, and the state civil service commission is required forthwith to place his name upon a list of suspended employés, for the office or position or class of work in which he has been employed, or for any corresponding or similar office, position, or class of work, and to certify his name for reinstatement or re-employment, in the order of his original appointment, before making certification from any other list. It contains the further provision that nothing "contained in the section shall be construed to apply to the position of private secretary, cashier or deputy of any official or department."

One of the questions arises right here. The relator claims that he was not a deputy of an official or of any department. That contention is based upon subdivision 1 of section 12 of the civil service law, which places in the exempt class "deputies of principal executive officers, authorized by law to act generally for and in place of their principals"; and it is argued that only the deputy county clerk is authorized by law to act generally for and in place of the county clerk, and that it was only intended to exempt such a deputy from the general provision of section 21. If, however, this mortgage tax department is a department within the meaning of section 21, and the relator was a deputy in that department, his place or position would seem to come within the exception contained in section 21.

Assuming, however, that the relator was not a deputy of the department, and that the provisions of section 21 applied to the relator and to the place which he held, I think, in view of the radical change in the mortgage tax system, the lessening of the work, and the corresponding reduction in the allowance to the county clerk for carrying on the work of the department, the county clerk had the right to abolish the position, and, if it was proper to do so, the relator could not have the position kept intact, simply because he was entitled to preference in the public service. Nor do I think that there was any similar position to which the county clerk could have appointed the relator. Certainly the duties of bookkeeper are not similar to the work done by the relator, and, besides, the position of bookkeeper is in the competitive class of the civil service. Neither is the position of cashier like that of deputy. The duty of cashier, as the name implies, and as appears by the affidavit of the county clerk, was, and still is, the handling and custody of the moneys collected in the department. A person may be fit for deputy and unfit for cashier.

After the change in the mortgage tax system, and the reduction in the allowance to the county clerk for the work of the tax department in his office, I think he had the right to reapportion the work, and in doing that he was not required to reorganize the department, with the single purpose of keeping intact the place held by the relator, or of making a new place for him; nor was he required to remove the person whom he had made the custodian of the moneys for which he is responsible, and appoint the relator, whom he does not want to intrust with the discharge of those duties. Matter of Breckenridge, 160 N. Y. 103, 54 N. E. 670; People ex rel. Chappel v. Lindenthal,

173 N. Y. 524, 66 N. E. 407. The reasons which made it proper to place the cashier in the exempt class, and permit the county clerk to make his own selection of the person to whom he desired to intrust the handling of the money for which he and his sureties are responsible, are equally cogent for permitting him to retain the person so selected by him for that important duty.

The final order should be affirmed, with costs. All concur; WILLIAMS, J., in result only.